Please be seated. We have a clerk calling next case, please. 3-20-0-1-2-7-0-6-0-9-F-9-R-O-V-C-A-L-N-R-2-J-Y-T-U-S-F-O-L-T-S Thank you. Mr. Foulkes, good afternoon. Good afternoon, Justice Conte, Your Honors. I'm Dimitri Foulkes. I'm from the Office of the State Appellate Defender, and I represent Danny Kendrick. Your Honors, in recent years, emerging adults have been challenging the constitutionality of their sentences under the principles of Miller v. Alabama. Normally, courts now recognize that emerging adults under the age of 21 are different from adults and that Miller claims are not foreclosed to them. Nevertheless, we've seen that normally courts have been reluctant to grant emerging adults full Miller relief, primarily because these emerging adults haven't presented scientific evidence or expert testimony in the trial court at initiative hearings to support their claims. We've seen this, for example, in DeRivers' house. This case is an exception. At sentencing, Danny Kendrick had an expert in developmental psychology testify on his behalf. This expert gave evidence not only about emerging adults in the brain development specifically, but also about Danny Kendrick as an individual. This evidence was not included. The state did not have its own expert at sentencing and did not present its own scientific evidence. So in light of this, Danny Kendrick is asking that this court vacate this mandatory de facto life sentence and to remand from the sentencing. He's made three separate arguments to obtain this relief, and my plan today, time permitting, is to address all three of them. First, he argues that his sentence violates a more disproportionate penalty clause on his case. And to be clear, we are asking that this court hold that it is unconstitutional for a court to impose a mandatory de facto life sentence on an emerging adult under the age of 21, such that the court does not consider that person's youth and its attaining characteristics. Mr. Kendrick's second argument is that his sentence is unconstitutional as applied. And third is that this court should conclude, at the very least, that the trial court's finding that he did not have rehabilitative potential was against the mathless weight of the evidence. I would note that we also raised an issue with regard to other acts of evidence. I know that issue is important. I'll be submitting it to the court on its own. But if the court has any questions about it, I'd be happy to answer them. With respect to the facial challenge, Dr. Garbarino gave extensive evidence about the psychological development of emerging adults. He explained that a person's brain isn't fully developed until the mid-20s, approximately the age of 25, and that this is the official position of the American Psychological Association. So we know that adolescence does not end at age 18, and adulthood does not begin at age 18. Adolescence continues until a person's early 20s. The doctor, in his expert opinion, explained that during this period of emerging adulthood, emerging adult's behavior and consciousness is in flux and is susceptible to change. And therefore, emerging adults are presumed to have rehabilitative potential. And during the period of emerging adulthood, the same issues of immaturity of thought and behavior and emotional regulation and failure to consider consequences and risks of actions, the same issues that plagued juveniles, like the Supreme Court talked about in Miller, also plagued emerging adults until their brains were fully developed. One other important point that Dr. Garbarino made sensing was that when children experience traumatic events throughout childhood, that has a negative impact on their psychological development. The higher levels of adversity an emerging adult experiences as a child, that slows down their brain development, and it damages their development, and that leads to increased levels of immaturity, on top of the immaturity that an emerging adult already has by virtue of being early adolescent. Now, in light of all of these things that Dr. Garbarino said, his opinion was that current developmental science strongly supports extending the principle of the Miller to emerging adults ages 18 and over. He said that current science does not support drawing the line at age 18. He even explained that the American Psychological Association knew all of this when they participated in the litigation of Miller v. Alabama and the Supreme Court of the United States. The scientific principles that Dr. Garbarino explained sensing are widely accepted. We've seen this in the decisions of the Appellate Court, and we've seen this in our legislature's policy. The Appellate Court recognizes that brain development does not end until the mid-20s, that Illinois as a society recognizes the age of 21 to be the beginning of adulthood, and that Illinois law treats emerging adults under the age of 21 differently than it does for grown adults. Our legislature has drawn the line at age 21 to mark the beginning of adulthood and all the rights that accompany adulthood. For example, the juvenile court act defines an adult to be someone who is age 21 and older. Our legislature prohibits the sale of alcohol, tobacco products, cannabis, and wagering tickets to people under the age of 21. In Illinois, a person has to be over 21 to obtain a FOIA card and must stay up front to consent. Under the unified court of corrections, plastic sentencing for recidivists only applies to people 21 and older. Recently... I have a question on that. What's the authority in the media, as in the Appellate Court now, to say that it's basically unconstitutional to sentence this young man, who's over the age of 18, in time of defense, in a way that he was sentenced to? There is not a case in Illinois that holds that. However, the Illinois Constitution, in particular, the Proportionate Penalties Clause, reflects... So isn't that a classified challenge and not official? No. No? No. The Constitution reflects the evolving standards of decency. And while I am also arguing it's a classified challenge, I'm now arguing it's cool to draw a bright line at age 21, such as sending an older adult that's close to the age of 21, so that rule applies not only to any tender, but to everyone similarly situated. So what I'm asking for is widespread relief, not just to look at anything that's circumspect. Our legislature also has recently allowed emerging adults under the age of 21 to be eligible for parole reviews subject to a variety of exceptions. In light of Dr. Valverdeo's evidence, the decisions of the Appellate Court, and also the legislature's policy, it's clear that Illinois society now regards emerging adults who are under the age of 21 to be different from adults, and that they should be treated differently. Like juveniles, emerging adults are less likely to be able to be even adults, and they have greater rehabilitative potential. It is cruel and it should shock the moral sense of the community to impose a mandatory de facto life sentence on an emerging adult without first considering the emerging adult's youth and systemic characteristics. Doing so decreases the motivation for an incarcerated emerging adult to want to rehabilitate, because he or she will know that they're never going to get out of prison. It also wastes rehabilitative potential, because even if you do rehabilitate, you're never going to be able to see outside prison and reenter society as a rehabilitated adult, despite the fact that they have rehabilitative potential. So, for obvious reasons, standing can be passed that this Court vacate the sentence as being patiently unconstitutional. My question is short. Are you asking for a break on age 21, or are you asking for an open end date? I'm asking for a remand to be shot at 21, so that under the proportion of felonies clause, the moral principles apply to 18, 19, and 20 years. And what's the value of that clause? The value is that you have emerging adults in that age range who are less culpable than adults who are presumed to be capable of rehabilitating. And if you don't consider their youth and the different characteristics and their capacity to rehabilitate at sentencing, and you just impose a mandatory de facto life sentence, you're ignoring that and you're wasting rehabilitative potential, and you're sending someone to prison for the rest of their life, despite the fact that they're less culpable than adults, and they're more akin to a juvenile. Okay, I understand. Under the principles of NOAA, it would seem that there should be an individual analysis on what's to say that a person who's 18 should not get a sentence because the person that they're targeting to cut off should be 21 years old. And that's entirely possible. Someone who is 23 could, due to, for example, their average childhood experiences, be developmentally red, such that, developmentally, it's kind of their offense to be a juvenile. That would be, because I'm asking for the court to draw a line at 21, that type of argument could be made as an amplified challenge. It doesn't disclose that. But one of the things that Dr. Gregory did say is that during that period of emergent adulthood, a person's development is in flux, and they become more mature as they get older. So their immaturity decreases from, you can start at whatever, but as they get closer to the mid-20s, they become more mature. So we think, in light of where the legislation has gone, and what society recognizes as reflecting on court decisions, that drawing a line at 21 is a sensible thing to do, and it's perfectly in line and justified by science. With respect to the as-applied challenge, Danny Kendrick was 19 years old at the time of his offense. He did not have a prior adjudication or conviction for a violent crime. The evidence in this case was not that Mr. Kendrick went out looking to kill someone. His offense was a robbery by law. The victim, Mr. Buckner, was shot when he resisted, and he grabbed Mr. Kendrick's collar. Now, Dr. Gregory, knowing his expert opinion, stated that Danny Kendrick's conduct in this case reflected the harmonic characteristics of youth, his immaturity, repulsiveness, and the failure to appreciate the risks and consequences of his action. And that all of that was due to his adolescence, and significant adverse childhood experiences that caused damage to his development. The doctor highlighted the fact that Danny Kendrick was physically and mentally abused not only by his parents, but also by other family members through his testimony, not sensing that he was whipped by his parents and that his family treated him as a slave. The evidence that Dr. Guerrero also emphasized was that neither of Danny Kendrick's parents wanted to be a parent. They essentially abandoned him. DCFS was involved at the age of three. Both of his parents were frequently in and out of prison. His mother had untreated schizophrenia, was law at home, and she had substance abuse problems. On top of that, Danny Kendrick lived in 16 different homes before the age of 18. So in addition to essentially not having parents who wanted to care for him, he didn't have a stable home. His adverse childhood experience score was worse than 90% of Americans, and he grew up in an area that was equipped with the thought of violence and developed a war zone mentality. And despite all of that, it was Dr. Guerrero's expert opinion that Danny Kendrick was still capable of rehabilitation. And he said that, and this was very significant, that Danny Kendrick's conduct at the age of 19 could not and did not accurately reflect his ability to rehabilitate and what he could become as an adult. And it actually masked all that. Where in the record does it indicate that the child judge didn't consider everything that he said? His childhood, his working homes, the whole thing. And what he did in prison, I'm just surprised. I will tell you this. The record, even Dr. Guerrero's own testimony, which can only be brought in by testimony from another expert, clearly established that he had rehabilitative potential. Is this your recording that says that the child judge must accept the expert testimony? Yes, it is. I don't have the case offhand. If the expert doesn't have a discretion, I can list it as a testimony and reject it. Not unless there is testimony from another expert that contradicts it. Or if somehow that expert was impeached, which was not the case here. You can't simply reject testimony of an expert without expert testimony that was listed and contradicts it. Getting back to your first question, the evidence is very clear that Daniel Kendrick had rehabilitative potential and that he was actually in the process of rehabilitating. We have an eight-year period between the offense and sentencing where the expert looked at everything he had done and said, this person is actually rehabilitating. He is changing his life. And there's not a reasonable conclusion. You can listen to the evidence of sentencing and read his report to conclude that Daniel Kendrick did not have rehabilitative potential. So what I believe happened here when you look at the judge's viewing of sentencing and sentencing determination was that the judge said, okay, Miller doesn't apply because he's 19. Therefore, I don't really need to listen to this expert and what this expert has to say. But under the Constitution in Illinois, rehabilitation is an objective at sentencing. And the judge must consider evidence of rehabilitation. And when that judge did not consider what the expert said, only by the test of evidence that Daniel Kendrick has rehabilitative potential and is actually rehabilitating, that's an error. And it's reflected in the court's finding that Daniel Kendrick was not capable of rehabilitation. And I see that my time is up. Any further questions? Thank you. Ms. Navarro. Good afternoon. My name is Courtney.  The defendant was convicted of first-degree murder and was then sentenced to 60 years imprisonment following the jury trial. On appeal, the defendant raised two issues. The first would be that the trial court erred in admitting other crimes of evidence, which was a video interview of the defendant where the defendant mentioned previous robberies into trial. And then the second issue was that the defendant's life sentence, the de facto life sentence of 60 years, violated the Article I, Section 11 of the Illinois Constitution. The defendant argued both that it violated as applied to the defendant and on its face. For today's argument, I would like to focus on the second issue. But if there are any questions as to the first, I would be happy to answer those as well. As to the second issue, the defendant first argued that the de facto life sentence was unconstitutional on its face. However, the state submits that in order to challenge a statute on its face, there would need to be a showing that the statute is unconstitutional under any possible set of facts. Here, the defendant is merely focusing on a specific age group, so that would have it be considered not a facial challenge, but rather an as-applied-to-defendant challenge, which is why I would like to focus on that today. The defendant argues that as applied to defendant, the de facto life sentence was unconstitutional. And cites to the other court's decision in People v. House where the court had vacated a 19-year-old defendant's life sentence and remanded it for evidentiary hearing. The Supreme Court then went ahead and reversed the appellate court's blanket vacate of the sentence and noted that in order for it to be applied, it needed to be taken into an evidentiary hearing. As such, it rejected a blanket standard that just because a defendant is 19 years old, a life sentence cannot be issued. It essentially stated that it needed to be in an evidentiary hearing where the facts needed to be applied specifically to the defendant's circumstances. Here, that did happen in the trial court. The trial court held a hearing where the defendant testified, the trial court considered all of the facts of the case, and the defendant presented a lengthy testimony from an expert that discussed the defendant's new rehabilitative potential, the effects of Miller on not just the defendant but other defendants in that age group. And after hearing everything, the trial court still held that the 60-year life sentence was appropriate. Now, while the defendant argues that, because the court noted that Miller didn't apply to the defendant, that it just dismissed anything else that occurred in that hearing, and that's just simply not the case. The court was just pointing out, as in trials, that there is no blanket restriction on a defendant to get a life sentence just because they're 19. That's what essentially the house held, and that's what the trial court again was noting. But in its decision, the trial court noted that it considered everything that occurred, the defendant's testimony, it listened to the testimony by the expert, it considered the severity of the crime, and it also considered the fact that the defendant had been given opportunities in the past to rehabilitate himself and had simply walked away from them. The court also considered the conduct that the defendant exhibited while in prison, while in the courtroom, and any time that the trial court was able to view and interact with the defendant. In addition, the trial court also noted that it took into account that the defendant, even at the sentencing hearing, still maintained his innocence of the murder. Now, these are all things that the trial court is allowed to consider in establishing their sentencing, but they have a great discretion to weigh everything that's submitted to them in order to make their determination. Here, the expert did testify that the defendant was 19 years old at the time, as to his home condition, his growing up condition, the struggles that he had with his family, and being in the CFS, but this was all considered by the trial court. The trial court did not simply ignore it and made a ruling. However, the trial court placed more weight on the defendant's demeanor in court and noticed that the defendant was still maintaining his innocence and that he had been given rehabilitative potential in the past. Now, the defendant said that we should just ignore the fact because this happened in the past, but this is all still things that the trial court is allowed to take into consideration in making its ruling. So here, really, the defendant is asking us to re-weigh everything that was submitted to the trial court during sentencing and weigh it in favor of the defendant while ignoring the trial court's own evaluation of everything that was submitted to them. What's your position? Do you believe that the trial court must accept the expert testimony? No, my position would be that that's not correct because the trial court has the discretion to weigh anything that's submitted, which is included in expert testimony as this defendant testified in the sentencing hearing. That's something that the trial court can weigh in its determination because it comes down to not just rehabilitative potential that is considered when making a sentence, but also the severity of their crimes and additional factors that the court can consider and must consider. The trial court, it's only required that they consider all of these factors, but they don't necessarily need to place more weight on the testimony that the expert gave, which even when you look at the testimony given by the expert, there was still some, even within their own community, whether an adult starts, becomes an adult at 21, 24, 25. Many of the sources that even defendant and the police noted, there's a disconnect between whether somebody starts growing at the age of 19, whether they start growing at 21, whether they start growing at 24. It's the way that somebody's mind develops, and I think that's something that the trial court is allowed to take into consideration, as well as everything else that's being presented. So here, because the state holds that the trial court did consider everything that was presented, there was a very thorough record as to the testimony that the expert gave. It cannot be said that the trial court just dismissed it by stating that Miller doesn't apply. The trial court, when it gave its determination, listed out every single thing that it went through. It stated all testimony heard, the pre-sentence investigation. So it did consider everything given its sentence, and that's why we ask that the court not deny the defendant's arguments. Thank you. Are there any other questions? There are a few in the motion. I would just like to stand on the motion that is submitted and just note that there was authority in the original brief that was cited that were some blogs and were journals from the scientific community, and I would just note that on an appeal we rely on the records such as the testimony that was presented during the trial during the sentencing hearing, not outside sources. Now, while the appellate court and the Supreme Court have all cited two sources like that in the past, we don't believe that that is an invitation for counsel to go ahead and also do that. Okay. Any other questions? Thank you. Thank you, Mr. Miller. Mr. Gold, let's take a rebuttal. I'll start with the fact that defendants of sentencing are entitled to maintain their innocence. I would note that during the statement of execution, Mr. Kendrick did express empathy for the victim's family, and that's important according to the unrebutted expert testimony in this case because the doctor said that all emerging adults are presumably capable of rehabilitation except for very rare circumstances. And those are circumstances where the emerging adult is a psychopath or they have been so profoundly damaged as a child that there's nothing to build upon to rehabilitate. The doctor said Danny Kendrick is not a psychopath. He's capable of rehabilitation. He shows a deep care spell for the people he cares about. Did he acknowledge his guilt in the statement of application or just express empathy? He maintained his innocence, which he's entitled to. Right. According to the trial, I'm talking about the statement of allegations. Correct. Correct. And he expressed empathy for the victim's family, saying, I don't intend to hurt them by maintaining my innocence. With respect to counsel's argument that Danny Kendrick is given opportunities in the past to rehabilitate, what the court at sentencing is referring to and what the state refers to now in appeal is the fact that Danny Kendrick walked out of drug treatment at age 17 when he was a juvenile for marijuana addiction, a drug that's now legal. I think it's more important and much more probative to look at what Danny Kendrick did in the eight years after the offense until the time he was sentenced than to look at what he did as a juvenile and at age 19. We have the expert highlighting the fact that Danny Kendrick, after the offense, is reflecting on his life. He has a much more mature perspective. He has appreciation for the fact that his family life and his childhood was dysfunctional and that his conduct at the age of 19 as an adolescent was due to the fact that he was immature and couldn't control his emotions. The expert is highlighting the fact that Danny Kendrick now meditates to deal with issues of anger and depression, that he seeks spiritual development, and that he's read over 2,000 books while in jail, which demonstrates intellectual curiosity. The expert said, I am confident he will continue to rehabilitate in the future. We have expert testimony saying he is currently rehabilitating. So it's inexplicable how the trial judge concluded that Danny Kendrick doesn't have rehabilitative potential. We have an expert saying he does, and that he actively is, and the record's showing that he is. Counsel argued that there's evidence in the record that says that the brain starts developing at various ages. It could be 19, it could be 20, it could be 21, it could be 25. I don't think that's accurate. The evidence was that people have different maturity levels at different ages. Someone at 21 could be more mature than someone at 23 or more mature at 18 than 23. And that doesn't mean their brain is fully developed when they're at that high maturity level, because someone could be immature because, like the doctor explained, adverse childhood experiences. That damages development. And the last thing I'll say, and it's just getting back to the question that Your Honor's been asking, both opposing counsel and I, is can a judge reject unrebutted expert testimony? I read the cases today that say that. I can't remember, aside from an unpublished decision, which cases those are for civil cases. I know in an unpublished decision, a criminal that when I returned to my office dealt with, that was relied upon. I would be more than happy to submit a supplemental authority if the court would like. Aside from that, if there's no further questions, I will respectfully request that the court take the identity of the defense and the name of the defense. Also, that was my comment. I wanted to see those cases. As I sit here right now, I would disagree. But if you say that you have them, I think it's safe. Will the court be issuing a written order? Or would you just like to find me a date and time? I think once you say that, you can stop. Absolutely. We'll stop. Absolutely. Are there any other questions? No. Thank you. We thank both of you for your evidence this afternoon. We'll take the matter under advisement and issue a written decision as quickly as possible.